IN the INTEREST OF L.G.R., a Child

NO. 14–16–00047–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed June 7, 2016.

Rehearing En Banc Overruled
July 7, 2016

198

Julie A. Ketterman, Houston, TX, for Appellant.

Sandra D. Hachem, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Christopher, and Jamison.

## OPINION

Martha Hill Jamison, Justice

Appellant L.S. ("Mother") appeals the trial court's final decree terminating her parental rights, and appointing the Department of Family and Protective Services ("Department") as sole managing conservator of L.G.R. ("Child"). On appeal Mother challenges the legal and factual sufficiency of the evidence to support (1) the predicate grounds under which her parental rights were terminated, and (2) that termination was in the best interest of the Child. Mother further challenges the appointment of the Department as sole managing conservator and alleges she received ineffective assistance of counsel at trial and on appeal. We affirm.

## I. BACKGROUND

On August 20, 2014, the Department received a report alleging Mother tested positive for marijuana at the time she gave birth. Mother and the Child's father admitted using marijuana in California where, she claimed, marijuana legally can be obtained and used under certain circumstances. At birth the child tested positive for marijuana and was diagnosed with hypoglycemia, jaundice, hypothyroidism, adrenal insufficiency, septo-optic dysplasia, an absent septum pellucidum, and metabolic acidosis. The Department sought removal of the child because the parents admitted using marijuana, the child was medically fragile, Mother's mental health was unstable, and neither parent was willing to allow the Department to view their home or to sign paperwork to voluntarily place the Child with a suitable alternate caregiver.

Shortly after birth, the Child was transferred to Texas Children's Hospital due to her declining health. On September 4, 2014, both parents visited the Child in the hospital. At the time of the visit, a social worker reported that Mother appeared to be under the influence of alcohol or drugs to the degree that the father "had to hold mom up to prevent her from falling." At a meeting with doctors and Department employees Mother "appeared to be in a daze" and "stared into space during the entire

meeting and would not say a word to anybody." Both parents refused to sign Parental Child Safety Placement papers.

On September 23, 2014, the Department received a letter from the Child's paternal aunt indicating Mother had been hospitalized at Cypress Creek Hospital and diagnosed with bipolar disorder, paranoid schizophrenia, and substance abuse. The letter further indicated that Mother had a history of domestic violence. When the Department went to Cypress Creek Hospital on September 24, 2014, it learned Mother had been discharged.

On October 20, 2014, the Department filed a first amended petition for the termination of both parents' rights to the Child. The Department alleged that termination of Mother's rights was warranted because, as relevant here, Mother:

> has been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by § 261.001(7), Texas Family Code pursuant to § 161.001(1)(R) Texas Family Code.[1]

On November 20, 2014, Mother signed a family service plan in which she agreed to:

- pay child support as ordered by the court;
- submit to drug and alcohol assessments and follow all recommendations;
- submit to random drug tests through the Department;
- obtain and maintain employment and notify the Department within 48 hours of a change in employment;
- attend all court hearings, permanency conference meetings and family visits;
- notify her caseworker within 48 hours of any involvement with law enforcement;
- actively participate in the completion of parenting classes;
- cooperate with the Department in case-planning goals and sign all necessary releases of information at the request of the Department;
- truthfully participate in individual therapy with an approved service provider and follow all recommendations of her therapist; and
- participate fully in a psychological evaluation and follow up with all recommendations.

Prior to trial, the Child was placed with a maternal cousin.

## II. TRIAL TESTIMONY

At trial, the Department introduced several exhibits, including a Children's Crisis Care Center report and Mother's drug test results, medical records and Family Service Plan. The report stated that Mother "was very guarded" when asked about her mental health history. Mother first saw a therapist at the age of eight when her parents were undergoing marital issues. Mother saw a psychiatrist at the age of 19; Mother did not know the diagnosis, but reported the psychiatrist prescribed Effexor, a medication used to treat depression.

Mother reported being admitted to a drug rehabilitation program in 2012 for tobacco use. After leaving the rehabilitation program, Mother was diagnosed with bipolar disorder and prescribed Lithium.

---

1. The Department also alleged, and the court also found, predicate grounds for termination of Mother's parental rights under sections 161.001(b)(1)(D) and (E). Because we conclude the evidence is legally and factually sufficient to support the trial court's findings under subsection R, we need not address the other predicate grounds for termination.

She stopped taking Lithium after gaining weight. Mother reported she did not take any prescribed medications during her pregnancy. After reporting trouble sleeping after the Child's birth, Mother was admitted to Cypress Creek Hospital and seen by a psychiatrist. She was prescribed psychotropic medication upon discharge from Cypress Creek. Mother continued to see the psychiatrist who treated her during that hospital visit.

Mother denied drug use other than the minor amount she admitted using during her pregnancy. Despite this denial, Mother admitted a 2011 conviction for driving while intoxicated.

Mother appeared unable to take responsibility for the Child's being in Department custody and resentful that she had been drug tested at the Child's birth without her consent. The Child was described as having "a serious medical condition" and being "extremely vulnerable" and totally dependent on the quality and consistency of her caregivers for her safety and well-being. The risk to the Child is high if Mother were unable to provide the necessary care.

Dr. Wafaa Farag, a psychiatrist, testified as an expert at trial. Farag conducted an assessment of Mother in May 2015, which also relied upon the report and her medical records. Due to Mother's evasive answers and minimization of her role as a parent, Farag was unable to fully assess and diagnose Mother. At the time of Farag's assessment, she recommended that Mother not be permitted to be alone with the Child, but she was unable to make that recommendation five months later at trial. Farag testified that Mother did not exhibit symptoms of depression or anxiety at the time of her assessment.

Mother testified that both she and the Child tested positive for marijuana at the time of the Child's birth. Mother admitted smoking marijuana while pregnant. Mother testified that she completed all of the services required by the family service plan, but admitted she was unemployed and lived with her parents. Mother receives Social Security assistance because she has a diagnosis of depression. Mother described it as "bipolar depression" for which she takes daily medication. Mother has a prior conviction for driving while intoxicated. Mother has not worked since May 2013, but provides $223 in monthly support for the Child. Mother testified that the Child has hypoglycemia and is given a daily growth hormone shot.

Shantae Walker, the Department caseworker, testified that the Department was seeking to terminate Mother's parental rights because the Child was born addicted to marijuana and the Child has extensive medical needs that cannot be met by Mother. Walker testified that Mother does not fully comprehend the Child's medical needs or what is necessary to care for the Child. Walker prepared Mother's Family Service Plan and testified that Mother completed services, including individual therapy with Keith Barton. Barton recommended that Mother end therapy and the Child be placed with Mother. However, Mother was not forthcoming in her psychological assessment by Tracy Thompson, and Thompson recommended Mother have only supervised visitation with the Child.[2] The Child has been placed in the home of Mother's first cousin. The cousin and her husband were meeting all of the Child's needs. The Child receives regular physical therapy in addition to vision therapy and visits from a nutritionist on a weekly basis. The De-

2. Thompson's report was part of the medical records in evidence. It does not appear that Barton's written report, which was testified to at trial, was part of the record.

partment conducted a preliminary home study on the maternal grandmother. The maternal grandmother's home was denied as a placement for the Child because the grandmother did not provide all information to the Department. Mother lives in the grandmother's home.

Mother's cousin, the foster mother, testified at trial. The foster mother testified that the Child has been diagnosed with septo-optic dysplasia, hypoglycemia, and hypopituitarism. At one time, the Child was diagnosed with plagiocephaly, which caused her head to be malformed. The malformation was corrected by placing a helmet on the Child for a period of time. The Child receives physical and vision therapy and is visited by a therapist approximately every other day. The Child is developmentally delayed, but is improving. The Child is legally blind; she can see light and dark, but cannot distinguish shapes. The foster mother accompanies the Child to all of her doctor's appointments. Mother initially was permitted to attend doctor's appointments with the Child, but became disruptive and later was not permitted to attend medical visits. The foster mother testified that Mother does not have full comprehension of the Child's diagnoses or her medical needs. The foster mother is not sure that the Child would get the care she needs if placed with Mother. The foster mother testified that the Child has bonded with her, her husband, and her son. They plan to adopt the Child. The father made threats to the foster family at a time Mother was on the phone call with him. The foster mother is concerned for the Child's safety if the Child is returned to Mother due to reports of domestic violence be-

tween Mother and the maternal grandmother.

At the conclusion of the bench trial, the trial court found clear and convincing evidence that Mother's parental rights should be terminated under Family Code section 161.001(b)(1)(R).[3]

### III. ANALYSIS

#### A. Predicate Termination Grounds

In her first three issues Mother argues the evidence is legally and factually insufficient to support the termination of her parental rights under Texas Family Code sections 161.001(b)(1)(D), (E), and (R). Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex.2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *In re D.R.A.,* 374 S.W.3d 528, 531 (Tex.App.–Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.,* 89 S.W.3d 17, 26 (Tex.2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear-and-convincing-evidence standard.

**3.** The trial court also found that Mother's rights should be terminated under sections 161.001(b)(1)(D) and (E). The trial court further found that the father's rights should be terminated under sections 161.001(1)(N) and (O). The father has not appealed.

*See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex.2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex.App.–Houston [14th Dist.] 2008, no pet.).

In reviewing legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 336. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.–Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex.2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

Relevant to this issue, section 161.001(b)(1) provides that termination is warranted if the trial court finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription. Tex. Fam. Code Ann. § 161.001(b)(1)(R). The Family Code states that "born addicted to alcohol or a controlled substance" means a child:

(1) who is born to a mother who during the pregnancy used a controlled substance, as defined by Chapter 481, Health and Safety Code, other than a controlled substance legally obtained by prescription, or alcohol; and

(2) who, after birth as a result of the mother's use of the controlled substance or alcohol:

(A) experiences observable withdrawal from the alcohol or controlled substance;

(B) exhibits observable or harmful effects in the child's physical appearance or functioning; or

(C) exhibits the demonstrable presence of alcohol or a controlled substance in the child's bodily fluids.

Tex. Fam. Code Ann. § 161.001(a).

In this case both Mother and Child tested positive for marijuana at birth. Marijuana is an illegal controlled substance under chapter 481 of the Health and Safety Code. *See* Tex. Health & Safety Code Ann. §§ 481.002(a)(5), 481.032, & 481.121. Mother admitted using marijuana while pregnant and medical tests conducted on the Child at birth revealed marijuana in the meconium fluid. Mother's urine analysis also revealed a positive test for marijuana.

■ Mother argues the evidence is legally and factually insufficient to support

the trial court's finding because there were no observable signs of marijuana, or withdrawal from marijuana in the Child at birth. The Family Code, however, does not require proof of signs of withdrawal. Under the Family Code definition, it is sufficient to show that the demonstrable presence of a controlled substance was observable in the Child's bodily fluids. *See* Tex. Fam. Code Ann. § 161.001(a); *In re D.D.G.*, 423 S.W.3d 468, 474 (Tex.App.–Fort Worth 2014, no pet.) (holding that under the statute, demonstrable presence of controlled substance at child's birth is sufficient to uphold a finding that child was born addicted to a controlled substance).

 Mother further argues that the Department presented no expert testimony that Mother was the cause of the Child being born addicted to a controlled substance. Mother does not cite, nor have we found, any legal authority supporting her argument that the Department was required to present expert testimony as to causation. *See In re D.D.G.*, 423 S.W.3d at 474. A reasonable fact-finder could believe that a child's testing positive for a controlled substance at birth could be caused by its mother's use of the controlled substance during pregnancy. Mother's admission of marijuana use during pregnancy and the admission of the medical records showing marijuana in the Child's bodily fluids constitute sufficient evidence under the Family Code that Mother was the cause of the Child being born addicted to a controlled substance. *In re V.G.*, No. 04–14–00802–CV, 2015 WL 1640340 at *5 (Tex.App.–San Antonio Apr. 8, 2015, no pet.) (mem.op.) (finding sufficient evidence to support a finding under subsection R when mother admitted drug use during pregnancy and child was born with observable withdrawal symptoms). Under the applicable standard of review,

based on the record evidence, a reasonable factfinder could form a firm belief or conviction that, under the Family Code definition, the Mother was the cause of the Child being born addicted to a controlled substance. Accordingly, on this record, the evidence is legally sufficient to support the trial court's finding that Mother was the cause of the Child being born addicted to a controlled substance. In addition, we conclude that, under the applicable standard of review, the evidence is factually sufficient to support the trial court's finding. *See In re D.D.G.*, 423 S.W.3d at 474–75 (upholding termination of mother's parental rights after mother admitted smoking methamphetamine during pregnancy and child tested positive for methamphetamine at birth); *In re R.S.O.C.*, No. 02–11–00337–CV, 2012 WL 2923289, at *5 (Tex. App.–Fort Worth July 19, 2012, no pet.) (mem.op.) (upholding termination of mother's parental rights to her three children after mother testified to using cocaine prior to youngest child's birth and youngest child's medical records indicated child tested positive for cocaine at birth).

Because there is legally and factually sufficient evidence to support the trial court's finding under section 161.001(b)(1)(R), we need not address Mother's arguments that the evidence is insufficient to support the trial court's findings under sections 161.001(b)(1)(D) and (E). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Mother's first three issues.

## B. Best Interest of the Child

 In her fourth issue Mother challenges the legal and factual sufficiency of the evidence to support the trial court's

finding that termination is in the best interest of the Child.

■ A strong presumption exists that the best interest of the child is served by keeping the child with her natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.–Houston [14th Dist.] 2003, pet. denied).

■ The non-exclusive factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parent's willingness and ability to provide the child with a safe environment).

There is a strong presumption that the best interest of a child is served by keeping the child with her natural parent. *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). Mother contends that the presumption in her favor is not rebutted because Mother took parenting classes, her home was free of danger, and she had "clean drug tests."

### 1. Present and Future Physical and Emotional Danger to the Child

■ We begin our analysis by noting that evidence supporting termination under the grounds listed in section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest).

The record contains evidence of Mother's conduct beyond the finding that she was the cause of the Child being born addicted to a controlled substance. The record reflects the following evidence:

- Mother exhibited erratic behavior and had a "dazed appearance" making her appear to be under the influence of drugs or alcohol while visiting the Child in intensive care;
- Mother has a questionable capacity to provide the requisite medical care for the Child; and
- Mother does not fully comprehend the Child's medical needs or what is necessary to care for the Child.

■ A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex.App.–Fort Worth 2007, no pet.). The factfinder can give "great weight" to the "significant factor" of drug related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex.App.–Dallas 2007, no pet.); *see also In re B.G.*, No. 14-14-00729-CV, 2015 WL 393044, at *7 (Tex. App.–Houston [14th Dist.] Jan. 29, 2015, no pet.) (mem.op.) (considering a parent's criminal and drug histories in affirming the decision that termination was in the best interest of a child). Mother points to her clean drug tests and admission of minor marijuana use in support of her argument. Mother's behavior evinces a course

of conduct that a factfinder reasonably could conclude endangers the Child's well-being.

## 2. Compliance with Services

Mother and the Department caseworker testified that Mother completed the services required by the family service plan. This factor weighs in favor of Mother.

## 3. The Child's Desires and the Stability of the Proposed Placement

■ The Child was very young at the time of trial and there is no evidence of her desires. When a child is too young to express her desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

Because the Child was removed at birth, Mother spent minimal time with the Child. Immediately following her birth the Child was hospitalized due to her medical needs. Due to Mother's disruptive behavior, she was not permitted to attend doctor's visits with the Child. After the placement with Mother's cousin, Mother visited the Child approximately once per month. The foster mother testified that the Child receives medical care and therapy she needs and is responding to therapy. The Child's physical development is progressing while in the foster home.

■ The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See Id.* at 119–20. A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best-interest determination. *Id.* ("Stability and permanence are paramount in the upbringing of children."). Therefore, evidence about the present and future placement of the Child is relevant to the factfinder's best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

The foster mother testified to the special needs of the Child and to her efforts to ensure the Child receives the medical care she needs. The foster mother has done so at the risk of her relationship with Mother and Mother's family. The foster mother testified that she does not regret caring for the Child and she would like to adopt her. The foster family has one other child, a three-year-old son. The foster mother testified that she not only opens her home to the therapists required by the Child's medical needs, but takes the Child to regular therapist and doctor's visits to ensure the Child receives the care she needs.

The record reflects that the Child's placement is stable and is meeting her special needs. In addition, the Child is improving in physical development. The child has bonded with the foster family, is well cared for by them, and has spent minimal time with Mother. This evidence weighs in favor of the finding that termination is in the Child's best interest.

## 4. Child's Present and Future Medical Needs

The Child was born with severe medical issues, which continue to require extensive medication and therapy. The record reflects that the foster mother regularly takes the Child to doctor's visits, and the Child is visited by therapists in the home approximately 15 times per month. The Child requires daily medication and is legally blind. The Child's physical development has improved under the foster mother's care. Mother has not demonstrated a desire to learn about the Child's medical needs, or the ability to meet those needs. A trier of fact could have inferred that Mother's past inattention to the medical needs of the Child would continue. The

foster mother has provided a stable, caring environment for the Child and has ensured the Child receives medication and appropriate physical and vision therapy.

The record evidence about the Child's medical needs weighs in favor of the trial court's finding that termination is in the best interest of the Child. *See In re J.R.W.*, No. 14–12–00850–CV, 2013 WL 507325 at *9 (Tex.App.–Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem.op.) (upholding best-interest finding when evidence showed that parent was unfamiliar with child's medications and could not demonstrate an understanding of child's medical diagnosis).

### 5. Parenting Abilities

■ The factfinder may consider a parent's parenting skills in a best-interest analysis. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex.App.–Fort Worth 2003, no pet.). The record reflects that Mother attended all parenting classes. The Department's caseworker testified that Mother's therapist recommended placing the Child with Mother. The evidence also shows, however, that the evaluator from the Children's Crisis Care Center and Thompson doubted Mother's ability to be left alone with the Child. Both reports expressed concern over Mother's lack of maturity. Thompson noted that Mother appeared "to be driven by her own personal needs and desires rather than the best interests of her child." Both also expressed concern over Mother's dubious responses to questions in her psychological assessment.

The record evidence about Mother's parenting abilities weighs in favor of the trial court's finding that termination is in the best interest of the Child. The record contains evidence supporting the trial court's best-interest finding based on Mother's history of endangering conduct, drug use during pregnancy, lack of stable employment, and apparent inability to comprehend the Child's medical needs. We overrule Mother's fourth issue.

### C. Rendition of Best–Interest Finding

■ In her fifth issue, Mother argues the trial court erred in signing the decree of termination because there was no oral rendition that termination was in the best interest of the Child. In its written order the trial court terminated Mother's parental rights pursuant to sections 161.001(b)(1)(D), (E), and (R) and found termination to be in the Child's best interest.

■ On appeal, appellant asserts that because the oral pronouncement did not include a best interest finding, the oral pronouncement is not sufficient to support termination. When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls. *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex.App.–Houston [14th Dist.] 2004, no pet.); *see also In re A.C.*, No. 04–12–00679–CV, 2013 WL 352449, at *2 (Tex.App.–San Antonio Jan. 30, 2013, pet. denied) (upholding termination where trial court's oral pronouncement only included findings that appellant's parental rights should be terminated based on section 161.001(1)(O), and section 161.003; written judgment also included finding that termination of appellant's rights was in the best interest of the children). Here, to the degree there is any inconsistency between the oral pronouncement and the written termination order, the written order controls. We overrule Mother's fifth issue.

### D. Conservatorship

In her sixth issue Mother argues the trial court erred in naming the Department as managing conservator of the

Child.[4] The Texas Family Code creates a rebuttable presumption that a parent will be named a child's managing conservator, unless the court finds that such appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a). The trial court made this finding in this case.

Family Code section 161.207 provides: "If the court terminates the parent–child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code Ann. § 161.207(a). In this case, upon termination of both parents' parental rights, the Department was appointed sole managing conservator of the Child.

Having overruled Mother's challenges to the termination findings, the trial court's was required to appoint the Department, or another permissible adult or agency, as managing conservator pursuant to Family Code section 161.207. *See In re C.N.S.,* No. 14–14–00301–CV, 2014 WL 3887722, at *13 (Tex.App.–Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem.op.). We previously have stated the appointment may be considered a "consequence of the termination." *In re J.R.W.,* No. 14–12–00850–CV, 2013 WL 507325, at *12 (Tex.App.–Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem.op.).

■■■■ We have reviewed the evidence supporting the trial court's termination findings and found the evidence to be legally and factually sufficient. The standard of review for the appointment of a non-parent as sole managing conservator is less stringent than the standard of review for termination of parental rights. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex.2007). We review a trial court's appointment of a nonparent as sole managing conservator for abuse of discretion only. *Id.* Therefore, we will reverse the trial court's appointment of a non-parent as sole managing conservator only if we determine that it is arbitrary or unreasonable. *Id.*

■■■■ We have already concluded that the evidence was sufficient to support termination of Mother's parental rights under the higher clear-and-convincing burden. Thus, we conclude that the trial court did not abuse its discretion in appointing the Department as the managing conservator of the Child. *See In re G.C.,* No. 01–12–00935–CV, 2013 WL 816440, at *10 (Tex. App.–Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem.op.) (finding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule Mother's sixth issue.

**E. Trial Court's Examination of a Witness**

In her seventh issue Mother argues that the trial court erred when it questioned Mother's cousin, the foster mother of the Child. In Mother's issue, she states, "While [the cousin] was on the stand—and during the State's direct examination—the court began questioning her for several minutes. This questioning was done in a biased and prejudicial tone." Mother does

4. In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's finding under section 153.131(a) to obtain reversal of the conserva-torship appointment. *See In re J.A.J.,* 243 S.W.3d 611, 616–17 (Tex.2007); *In re A.S.,* 261 S.W.3d 76, 92 (Tex.App.–Houston [14th Dist.] 2008, pet. denied).

not cite to the record or otherwise identify the questioning.

■■■ Mother did not object during the trial court's questioning of the foster mother. To preserve error for appeal, a party is required to make a timely request, objection or motion to the trial court and obtain an express or implied ruling. Tex. R. App. P. 33.1(a). Mother failed to preserve error by failing to object to the trial court's questions at trial. Moreover, in her brief, Mother makes no argument other than to complain that the trial court's "questioning was done in a biased and prejudicial tone." The appellate record is inherently limited in its ability to reflect the trial judge's tone of voice, demeanor and facial expressions. Mother's argument appears to be based on the trial judge's adverse ruling; this evidence alone is not sufficient to establish bias. *See Huff v. Manfredi*, 504 Fed.Appx. 342, 344 (5th Cir.2012). We overrule Mother's seventh issue.

### F. Ineffective Assistance of Counsel

■■■ Having determined that Mother is not entitled to rendition of judgment based on insufficient evidence, we turn to her complaints against her former appointed trial and appellate counsel. In her eighth issue, Mother contends her trial counsel rendered ineffective assistance because he failed to:

- file an answer or counterclaim;
- propound discovery;
- investigate or research the case;
- object to inadmissible and/or prejudicial exhibits;
- object to the trial court's questioning of a witness;
- call witnesses;
- properly preserve the record for appeal;

- object to the order because the trial court did not make an oral rendition on best interest; and
- preserve a factual sufficiency complaint by filing a motion for new trial.

■■■ In Texas, there is a statutory right to counsel for indigent persons in parental–rights termination cases, and this right encompasses the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). We apply the established *Strickland* test in parental-rights termination proceedings. *Id.* at 545 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under *Strickland*, to establish an ineffective assistance claim, an appellant must show the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In other words, a parent must show that counsel's performance was deficient and that this deficient performance prejudiced the parent's case. *In re M.S.*, 115 S.W.3d at 545.

■■■ To determine whether representation was deficient, we must consider all of the circumstances surrounding the case and determine whether counsel was "reasonably effective." *Id.* In doing so, we afford great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assis-

tance." *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Only if counsel's conduct is "so outrageous that no competent attorney would have engaged in it," will we find such performance deficient. *Id.* (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001)).

In conducting the harm analysis under the second prong of *Strickland,* reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *In re M.S.,* 115 S.W.3d at 550. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Thus, the parent must also show that "counsel's deficient performance prejudiced the defense." *In re J.O.A.,* 283 S.W.3d at 344 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

■ An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 622–23 (Tex.App.–Houston [1st Dist.] 2009, pet. denied). We may not speculate and find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions. *P.W. v. Tex. Dep't of Family & Protective Servs,* 403 S.W.3d 471, 476 (Tex.App.–Houston [1st Dist.] 2013, pet. dism'd) (recognizing that courts will ordinarily presume that the challenged action is sound trial strategy when the record is silent as to counsel's motivations).

The allegations in Mother's brief are cursory and not supported by the record. Mother complains that trial counsel did not file an answer, propound discovery, or conduct research or an investigation. With no basis in the record, Mother argues that had counsel done these tasks, "this case may have been won at the adversary hearing, dismissed at an earlier stage, or been ripe for a monitored return." Mother lists three exhibits that were admitted without objection: (1) the Children's Crisis Care Center report; (2) drug test results; and (3) medical records.

■ There is nothing in the record before us showing that counsel's trial strategy was unreasonable. Without an explanation from trial counsel for his actions, we may not, in the face of the strong presumption in favor of reasonable representation, conclude that trial counsel lacked sound strategic reasons for his conduct. *See In re M.S.,* 115 S.W.3d at 549. The record demonstrates that Mother's trial counsel may have acted in accordance with a plausible strategy. *See Maxwell v. Tex. Dep't of Family & Protective Servs.,* No. 03–11–00242–CV, 2012 WL 987787, at *6 (Tex.App.–Austin Mar. 23, 2012, no pet.) (mem.op.) (stating that an error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis). Mother's claims are insufficient to substantiate an ineffective assistance claim. *See In re H.R.M.,* 209 S.W.3d 105, 111 (Tex.2006) (rejecting ineffective assistance claim based on appellant's seven specific challenges to counsel's performance finding appellant failed to overcome strong presumption of reasonably effective assistance); *Maxwell,* 2012 WL 987787, at *6 (stating that questions regarding what witnesses to call, whether and how to cross-examine witnesses, and when to object are all matters of classic trial strategy that may indicate a case could be tried differently, but do not establish deficient representation); *see also In re J.W.,* 113 S.W.3d 605, 616 (Tex.App.–Dallas 2003, pet. denied) (holding that the failure to object to the admission of the

parents' criminal records does not support an ineffective assistance claim).

As to the second prong of the *Strickland* test, Mother has not shown that any of the actions she claims her trial counsel should have taken would have resulted in a different outcome. In light of the evidence in support of the trial court's findings, Mother has not established that but for the alleged deficiencies in her counsel's performance a different outcome would have resulted. *See Bermea v. Texas Dep't of Family & Protective Servs.*, 265 S.W.3d 34, 44 (Tex.App.–Houston [1st Dist.] 2008, pet denied) (holding appellant did not suffer harm by counsel's deficient performance in failing to preserve sufficiency review where she could not have prevailed on those arguments). In conclusion, Mother's allegations against her counsel's performance do not rise to the level of "outrageous" conduct. The record does not affirmatively show a reasonable probability that, but for the conduct of Mother's counsel, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Therefore we hold that under the two-pronged *Strickland* test, Mother has failed to show that her trial counsel was deficient or that he prejudiced her defense. *See In re M.S.*, 115 S.W.3d at 544.

As to Mother's claim of ineffective assistance of appellate counsel, Mother complains about her first appellate counsel who was appointed immediately after trial. The judgment was signed January 21, 2016. The notice of appeal, clerk's record, and reporter's record were filed timely. On Mother's motion, her appointed appellate counsel was permitted to withdraw after Mother retained current appellate counsel.

■■■ Mother claims appellate counsel rendered ineffective assistance by failing to file a "proper notice of appeal," a com-

plete record from the district clerk, and the transcripts from adversary and statutory hearings. Mother has failed to show that any of these alleged errors prejudiced her defense or could not have been corrected by current counsel. We overrule Mother's eighth issue.

## IV. CONCLUSION

Having overruled Mother's issues, we affirm the trial court's judgment.