

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00743-CV

**IN THE INTEREST OF J.D.-V.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02312
Honorable Richard Garcia, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: February 27, 2019

AFFIRMED

R.D. (hereinafter referred to as "Mother") appeals the trial court's order terminating her parental rights to her child, J.D.-V. On appeal, Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination was in the child's best interest and that the trial court's ruling was not based on evidence described in section 161.001(c) of the Texas Family Code. We affirm the trial court's order.

## BACKGROUND

On October 12, 2017, the Texas Department of Family and Protective Services ("Department") filed a petition to terminate Mother's parental rights to J.D.-V. A bench trial was held on September 5, 2018.

The Department's investigator testified that the Department received a referral on September 19, 2017 when Mother took J.D.-V. to the hospital approximately six hours after he was born. Mother never sought prenatal care during the pregnancy and the child was born at Mother's home. The infant was assessed and tested positive for opiates, THC, and amphetamines. The infant was then admitted to the Neonatal Intensive Care Unit ("NICU") for withdrawal care. Mother also tested positive for opiates, THC, and amphetamines and admitted during the trial to using marijuana and taking opioids without a prescription while she was pregnant with J.D.-V. The investigator testified that Mother also admitted to amphetamine use while she was at the hospital. The investigator stated that Mother could not be located when J.D.-V. was released from the hospital and the child has been in the custody of the Department ever since. The Department implemented a family service plan with the ultimate desire to reunite the child with Mother or, in the alternative, with a family member. However, Mother did not comply with the plan and listed the maternal grandmother ("Maternal Grandmother") as the only relative for potential placement of the child. When the caseworker explored placing the child with Maternal Grandmother, she discovered that Mother and Maternal Grandmother's boyfriend lived in the home with Maternal Grandmother. Maternal Grandmother's boyfriend did not pass the criminal background check. The Department informed Mother that she and Maternal Grandmother's boyfriend would have to move out before placement could be made with Maternal Grandmother. The caseworker later discovered that Maternal Grandmother had moved to New York and was no longer an option for placement. Maternal Grandmother currently lives in New York, has only visited the child once shortly after he was born, and has not complied with either Texas or New York state requirements for serving as the custodial conservator of the child.

The Department caseworker testified that Mother had not completed her service plan. Specifically, she had not completed the inpatient drug treatment, psychosocial evaluation,

individual counseling, and parenting program. Also, she has not complied with random drug test requirements and she has only visited the child a maximum of four times since he was born.[1] During the pendency of the case, Mother tested positive for opiates and synthetics and she admitted to continued use of drugs. The caseworker did not think Mother had addressed her drug problem and noted that she refused inpatient drug treatment. Mother would not let the caseworker into her home to conduct a home study—as required by the family service plan—and the caseworker did not believe that Mother could provide a safe and stable home. The caseworker also stated that Mother has not demonstrated she has the capability to provide for the child's basic needs. The caseworker testified that the child was currently in a stable foster home, the child has bonded with the foster family, the foster family is willing to adopt the child, and placement with the foster family is in the child's best interest. The permanency reports to the court state that the child has thrived with his foster family.

Mother testified that she started an inpatient drug treatment program the day before trial began and was willing to do "whatever it takes" to get her child back. She conceded she had not completed drug treatment, had tested positive for drugs during the case, and had only visited the child a maximum of four times.

The Department and the child's attorney ad litem recommended that Mother's parental rights be terminated. After hearing the testimony and argument of counsel, the trial court terminated Mother's parental rights.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate

---

[1] The permanency report to the court states that Mother attended four supervised visitations with the child, whereas the caseworker testified that mother only attended three supervised visitations with the child.

grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of five predicate grounds to terminate Mother's parental rights and also found termination of Mother's parental rights to be in the best interest of the child.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standard of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under this standard, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04–16–00516–CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

### BEST INTEREST FINDING

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest . . . ." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct

by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Here, there was no evidence regarding the child's desire—since the child was only a year old at the time of trial—but the caseworker testified that the child had bonded with his foster family and that the child was happy and thriving. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family [and] are well-cared for by them . . . ."). Although Mother testified she had started an inpatient drug treatment program, she had only started the program one day before trial. Mother had not completed a psychosocial evaluation, individual counseling, a parenting program, complied with random drug test requirements, and she had only visited the child a maximum of four times since he was born. Mother also tested positive for drugs and admitted to taking drugs during the pendency of the case. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child). In addition, Mother would not allow the Department to conduct a home evaluation, and the caseworker testified that she did not believe Mother could provide a safe and stable home for the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting parent's inability to provide a stable home supports a finding that termination is in the best interest of the child). Our standard of review requires that we defer to the trial court as the sole judge of the weight and credibility of the evidence. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) ("[W]itness credibility issues 'that depend on appearance and demeanor cannot be weighed by the appellate court; the witnesses are not present. And even when credibility issues are reflected in the written transcript, the appellate court must defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable.'").

Having reviewed the record, we hold the evidence is sufficient to support the trial court's finding that termination of Mother's parental rights was in the child's best interest. Therefore, we overrule Mother's first issue.

### TEXAS FAMILY CODE § 161.001(c)

Mother next argued the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is *not* based on evidence that she: (1) homeschooled the child; (2) is economically disadvantaged; (3) has been charged with a nonviolent misdemeanor offense . . .; (4) provided or administered low-THC cannabis to a child [who had a prescription for the drug]; or (5) declined immunization for the child for reasons of conscience, including a religious belief. TEX. FAM. CODE ANN. § 161.001(C). Subsection (c) precludes a court from entering those specified findings to support a termination order. Subsection (c) neither requires nor prohibits the Department from offering evidence described therein. Because the Department does not carry a burden of proof under section 161.001(c), the statute merely limits the bases that a court may use to order a parental termination under section 161.001(b).

Here, the trial court expressly stated that its order for termination of the parent-child relationship was not based on any actions taken by Mother that are described in section 161.001(c). Mother's second point of error is without merit. We therefore overrule Mother's second issue based on the evidence described.

### CONCLUSION

The order of the trial court is affirmed.

Rebeca C. Martinez, Justice