

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00034-CV

**IN THE INTEREST OF D.M.H.**, Jr., a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00016
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: June 19, 2019

AFFIRMED

S.C. appeals the trial court's order terminating her parental rights to D.M.H., Jr.  The only issue presented on appeal is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in D.M.H., Jr.'s best interest.  We affirm the trial court's order.

### BACKGROUND

On January 3, 2018, the Texas Department of Family and Protective Services filed a petition to terminate S.C.'s parental rights to D.M.H., Jr.  On November 28, 2018, a bench trial was held.  At the time of the trial, D.M.H., Jr. was sixteen months old.  The trial court terminated S.C.'s parental rights, and she appeals.[1]

---

[1] The order also terminated the parental rights of D.M.H., Jr.'s father; however, he did not appeal.

**STANDARD OF REVIEW AND STATUTORY REQUIREMENTS**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following two predicate grounds under subsection 161.001(b)(1) to terminate S.C.'s parental rights:

> (1) S.C. constructively abandoned D.M.H., Jr. who had been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (a) the Department made reasonable efforts to return D.M.H., Jr. to S.C.; (b) S.C. had not regularly visited or maintained significant contact with D.M.H., Jr.; and (c) S.C. demonstrated an inability to provide D.M.H., Jr. with a safe environment; and

> (2) S.C. failed to comply with a court-ordered service plan.

*See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(N), (O); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (noting evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest). The trial court also found clear and convincing evidence that terminating S.C.'s parental rights was in D.M.H., Jr.'s best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**BEST INTEREST FINDING**

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

D.M.H., Jr. was removed from S.C.'s care after she left a domestic violence shelter and returned to D.M.H., Jr.'s father, D.H., who engaged in domestic violence. A Department worker spoke with her by telephone, and she told the worker she was residing in the overflow area of a homeless shelter. The worker was concerned that D.M.H., Jr. was exposed to the elements because D.M.H., Jr. had been treated for respiratory issues due to his wheezing. About a week and a half after S.C. left the shelter, the Department located her at D.H.'s residence. The Department removed D.M.H., Jr. from S.C.'s care because it was concerned for his safety and well-being.

The Department's worker who removed D.M.H., Jr. from S.C.'s care testified S.C. always needed assistance to take care of D.M.H., Jr. For example, the Department received its initial

referral when D.M.H., Jr. was ten days old and the hospital had concerns S.C. was not able to understand about feeding him the proper amount of food or how to feed him. A second referral was made when S.C. was seen walking around in ninety degree heat with D.M.H., Jr. dangling in between her arms, and a concern was expressed about D.M.H., Jr. possibly being dehydrated. Issues also arose when the weather was cold, and D.M.H., Jr. was not properly dressed for cold weather.

Although S.C. was initially on track with her service plan and the Department was working toward reunification, S.C. went to Atlanta with D.H. sometime in July of 2018. S.C. testified she wanted to get away because the case with the Department was "getting" to her. The Department's caseworker testified S.C. did not return from Atlanta until September of 2018, approximately two months before trial. When S.C. returned, she did not reengage in services or ask to see D.M.H., Jr. until a few weeks after her return. Sometime after S.C. returned from Atlanta, she had another child who also is in the Department's care.

S.C. admitted she was diagnosed with bipolar disorder when she completed her psychiatric evaluation and stated she was taking her medication; however, she subsequently admitted she had only been taking the medication since about one month before trial. The Department's caseworker testified S.C. did not begin taking medication until a month before trial and had not been addressing her mental health issues throughout the case. *See In re J.M.T.*, 519 S.W.3d 258, 269-70 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (noting failure to comply with service plan supports a finding that termination is in the best interest of the child).

S.C. testified she could provide D.M.H., Jr. with a safe and stable home at the apartment where she had been residing for a few weeks. Although she admitted she did not have a crib for D.M.H., Jr., she was certain a charitable organization would provide her with one. S.C. was not employed but had applied for SSI. At the time of trial, she was relying on charitable organizations

and her family to pay her rent and living expenses. The Department's caseworker testified S.C. did not have the financial or social support to care for D.M.H., Jr.'s basic needs and was unable to care for him by herself. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting parent's inability to provide a stable home supports a finding that termination is in the best interest of the child).

S.C. had completed parenting and domestic violence classes. The Department's caseworker, however, testified S.C. did not meet the goals of the domestic violence classes and needed to be re-enrolled because she resumed her relationship with D.H. and went with him to Atlanta after she completed the classes. While D.H. and S.C. were in Atlanta, security had to be called when they had a dispute at a hospital.

At trial, S.C. testified she is no longer in a relationship with D.H. Although she initially described the domestic violence as involving arguing but never any physical abuse, she later denied any domestic violence occurred. S.C. later recalled telling a Department worker that D.H. bumped her so hard she fell and broke a table, but she testified it was an accident. S.C. did not recall telling the Department worker that D.H. pulled the telephone cord out of the socket during an argument. She also did not recall telling the psychiatric evaluator that D.H. threw a glass at her face. The Department's caseworker testified S.C. had not shown that she can be a protective parent given that she continued to engage in a relationship with D.H. *See In re R.J.*, 568 S.W.3d 734, 754 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (noting "[e]vidence of domestic violence in the home is supportive of a trial court's best-interest finding").

D.M.H., Jr. was living with the same foster family he was placed with at the time the Department filed its petition. D.M.H., Jr.'s foster father testified he was placed with the family in January of 2018 when he was six months old. At that time, D.M.H., Jr. had respiratory problems which cleared up after treatment by a pediatrician and specialist. The foster father testified

D.M.H., Jr. recently started calling him and his wife "dadda" and "mama," and they were ready to adopt him. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination.").

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating S.C.'s parental rights was in D.M.H., Jr.'s best interest.

## CONCLUSION

The order of the trial court is affirmed.

Beth Watkins, Justice