

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00312-CV

**IN THE INTEREST OF M.R.P.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00799
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:     Luz Elena D. Chapa, Justice
             Beth Watkins, Justice
             Liza A. Rodriguez, Justice

Delivered and Filed: October 12, 2022

AFFIRMED

A.O. appeals the trial court's order terminating her parental rights to her child M.R.P. (born 2021).[1] A.O. argues the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(O) and its finding that termination is in the best interest of M.R.P. She also argues the trial court abused its discretion by appointing the Texas Department of Family and Protective Services as M.R.P.'s permanent managing conservator. We affirm the trial court's order.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child, her parents, and her maternal grandmother. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

M.R.P. was born in late April of 2021. At that time, M.R.P.'s parents, A.O. and S.P., lived with A.O.'s mother, M.O. On May 7, 2021, the Department removed M.R.P. from the hospital where she was born due to concerns with A.O.'s previous history with the Department, A.O.'s previous drug use, and S.P.'s and M.O.'s drug use in the home. The Department obtained temporary managing conservatorship over M.R.P., placed her in foster care, and filed a petition to terminate A.O.'s parental rights. The Department created a family service plan requiring A.O. to, inter alia, complete psychological and psychiatric evaluations, follow all recommendations of the psychiatric evaluation, participate in individual counseling, participate in and complete an approved parenting class, "demonstrate her ability to live a drug free lifestyle," and attend scheduled visitations with M.R.P. as a condition of reunification. The Department ultimately pursued termination of A.O.'s parental rights.

On April 13, 2022 and May 12, 2022, the trial court held a two-day bench trial at which A.O. appeared. The trial court heard testimony from three witnesses: (1) Jazzmion Owens, a Department investigator; (2) A.O.; and (3) Della Longoria, a Department caseworker. On May 16, 2022, the trial court signed an order terminating A.O.'s parental rights pursuant to section 161.001(b)(1)(O) and its finding that termination of A.O.'s parental rights was in the best interest of M.R.P.[2] A.O. appealed.

## ANALYSIS

### Standard of Review

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and

---

[2] The trial court also terminated S.P.'s parental rights. He is not a party to this appeal.

powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate A.O.'s parental rights and that termination was in the best interest of M.R.P. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

### Statutory Termination Grounds

#### Applicable Law

In her first argument on appeal, A.O. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination was merited under Texas Family Code

section 161.001(b)(1)(O). To terminate a parent's parental rights under subsection O, the trial court must find, by clear and convincing evidence, that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department [] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE § 161.001(b)(1)(O).

*Application*

A.O. argues the evidence presented at trial "is not sufficient evidence as to the nature of the service plan, whether [A.O.] completed it, and whether she had a reasonable opportunity to complete it." The trial court admitted the service plan into evidence, and that exhibit shows A.O. received and signed the plan on June 25, 2021—ten months before the trial began on April 13, 2022. A.O. does not dispute that the service plan was made an order of the court. The record shows A.O. was not incarcerated at any point after she received the service plan and that she completed at least some of its requirements. For example, A.O. underwent a psychological evaluation and a drug assessment, and she completed an outpatient drug treatment program.

But "Texas courts have held that substantial compliance is not enough to avoid a termination finding under section 161.001[(b)](1)(O)." *In re C.A.*, No. 04-15-00582-CV, 2016 WL 805550, at *5 (Tex. App.—San Antonio Mar. 2, 2016, pet. denied) (mem. op.) (internal quotation marks omitted). A.O. conceded that she did not complete the individual counseling required by her service plan, and she offered inconsistent testimony about when she planned to start counseling. On April 13, 2022, she testified that she was to begin individual counseling "tomorrow," but on May 12, 2022, she testified that her first session was scheduled for May 27, 2022. The trial court also heard conflicting evidence about whether A.O. completed her required

parenting classes. A.O. testified that she did, but Longoria testified she did not. The trial court had the sole authority to resolve that conflicting testimony. *See In re J.O.A.*, 283 S.W.3d at 346.

After reviewing the evidence under the appropriate standards of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that A.O. failed to comply with all the terms of a court-ordered service plan. *See* TEX. FAM. CODE § 161.001(b)(1)(O); *In re J.O.A.*, 283 S.W.3d at 345. The record also shows no contrary evidence that would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See In re J.O.A.*, 283 S.W.3d at 345–46.[3]

We overrule A.O.'s first issue.

### Best Interest

#### Applicable Law

In her second issue, A.O. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in M.R.P.'s best interest. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[4] for courts to consider regarding a

---

[3] To the extent A.O. asserts the Department did not establish that M.R.P. was removed from A.O.'s care "under Chapter 262 for the abuse or neglect of the child" because "the caseworker who testified had had no contact with the mother or even the child" and "had not even read the removal affidavit," this is not correct. Owens, the Department's investigator, testified that she had not reviewed the removal affidavit or met with A.O. or M.R.P. because she "didn't really do anything on this case, except for close it" after "[t]he previous worker that wrote the affidavit left the Department." Department caseworker Longoria, on the other hand, testified that she had worked on this case since "approximately, May or June 2021," had personally reviewed the removal affidavit and A.O.'s previous history with the Department, and had in-person contact with A.O. and M.R.P. throughout this case. A.O. agreed at trial that Longoria had been her caseworker for the duration of this case and prepared the service plan for her.

[4] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5)

parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[5] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[5] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Application*

It is undisputed that A.O. did not complete the individual counseling requirement of her service plan, and the trial court also heard evidence that she did not complete her required parenting classes. Longoria testified that the counseling requirement of A.O.'s service plan was "one of the most important ones . . . so that she can learn better coping skills and help manage her depression, parenting skills." This evidence is probative on the issue of best interest. *See In re C.H.*, 89 S.W.3d at 28; *In re A.M.S.*, No. 04-18-00973-CV, 2019 WL 2194067, at *6 (Tex. App.—San Antonio May 22, 2019, no pet.) (mem. op.). Indeed, the legislature has provided that a trial court conducting a best interest analysis may properly consider both "the willingness and ability of the child's family to seek out, accept, and complete counseling services" and the parent's "willingness and ability . . . to effect positive environmental and personal changes within a reasonable period of time." TEX. FAM. CODE § 263.307(b)(10), (11).

A trial court conducting a best interest analysis may also consider a parent's delay in beginning services. *See In re R.L.G.*, No. 04-14-00238-CV, 2014 WL 4922927, at *7 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.); *see also* TEX. FAM. CODE § 263.307(b)(10), (11). A.O. testified that she broke up with S.P. in March of 2022 and that she began engaging in services "a month before" she ended their relationship. She explained that she began engaging in services late because she lacked "support and rides to go to [her] services." She testified that at the time of trial, she was relying on M.O. for transportation to her appointments. She admitted, however, that M.O. did not have a driver's license.

Another factor a trial court may consider in a best interest analysis is "a history of abusive or assaultive conduct by the child's family[.]" TEX. FAM. CODE § 263.307(b)(7). There is no evidence that A.O. physically abused or assaulted M.R.P. However, A.O. testified that she was incarcerated prior to M.P.R.'s birth due to "an MTR for [her] probation," and she stated that her

probation resulted from a previous conviction of aggravated assault with a deadly weapon. *See id.* She also testified that at the time of the trial in this case, she was still on probation for the aggravated assault charge. While a parent's criminal history, standing alone, is not dispositive on a child's best interest, a trial court is entitled to consider that history alongside other factors. *See In re E.J.R.*, No. 04-21-00444-CV, 2022 WL 947569, at *4 (Tex. App.—San Antonio Mar. 30, 2022, no pet.) (mem. op.); *In re D.R.A.*, 374 S.W.3d 528, 536 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also In re E.C.*, No. 02-20-00022-CV, 2020 WL 2071755, at *7 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.) ("[W]hen a parent repeatedly commits criminal acts that subject the parent to incarceration," the child is subjected "to ongoing uncertainty regarding who will take care of him.").

A trial court may also consider whether the parent missed or was late to visits with the child. *See In re R.B.*, 200 S.W.3d 311, 316–17 (Tex. App.—Dallas 2006, pet. denied). The trial court heard conflicting evidence on this point. A.O. testified that she missed "[t]wo or three" visits, and she attributed those missed visits to S.P.'s refusal to drive her. Longoria, in contrast, testified that A.O. missed nineteen out of forty-five possible visits. The trial court had the sole authority to resolve this conflicting testimony. *See In re J.O.A.*, 283 S.W.3d at 346.

A.O. does not dispute that she has a history of illegal drug use. Nor does she dispute that her drug use contributed to the termination of her parental rights to five of her older children. *See* TEX. FAM. CODE § 263.307(b)(8) (trial court may consider "whether there is a history of substance abuse by the child's family or others who have access to the child's home"); *In re E.D.*, 419 S.W.3d at 620 (trial court may judge parent's future conduct by past conduct). At trial, A.O. agreed that less than a year before M.R.P. was born, both A.O. and a sixth child tested positive for methamphetamines at that child's birth. *See* TEX. FAM. CODE § 263.307(b)(8). A.O. agreed that she did not complete the services the Department required after the removal of her sixth child.

A.O. notes, however, that the evidence in this case shows she completed a drug assessment and outpatient drug treatment; she did not test positive for drugs during this case; and neither A.O. nor M.R.P. tested positive for drugs when M.R.P was born. She also contends that the evidence shows that "she never used meth during her pregnancy with [M.R.P.]." But A.O. testified that she stopped using methamphetamines because she was incarcerated on December 21, 2020. She also testified that she was pregnant when she was incarcerated. M.R.P. was born in April of 2021, approximately two months after A.O. was released from incarceration. Based on that evidence, the trial court could have reasonably concluded that A.O. used methamphetamines during her pregnancy. Evidence of illegal drug use during pregnancy is relevant to a best interest analysis. *See, e.g.*, *In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Longoria testified there were "no concerns" with the results of the drug tests that A.O. took for the Department. She also testified, however, that A.O. only appeared for eight of the thirteen drug tests the Department sent her for. *See, e.g.*, *In re M.M.*, No. 04-21-00463-CV, 2022 WL 1096381, at *4 (Tex. App.—San Antonio Apr. 13, 2022, no pet.) (mem. op.). When asked if she had a sponsor, A.O. first responded that she did not know what a sponsor was, then stated that she had told her drug rehabilitation counselor "that my other sponsor is my probation officer. She can speak for my behalf."[6] A.O. also testified that she did not establish a relapse plan. When asked why, A.O. stated, "[B]ecause I'm not going to—I'm not going to relapse." When asked if she attended Narcotics Anonymous, she stated, "No. I don't need it." The trial court was not required to credit this testimony. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). It is also undisputed that M.O., with whom A.O. lived at the time of trial, told Longoria that

---

[6] While announcing its ruling, the trial court stated, "I understood you to say that you didn't have an NA or AA sponsor." A.O. did not object to this statement at trial and she does not challenge it in her brief.

M.O. could not be considered as a placement for M.R.P. because she would not pass a drug test. *See* TEX. FAM. CODE § 263.307(b)(8).

The legislature has determined that a trial court may consider "the results of psychiatric, psychological, or developmental evaluations of . . . the child's parents[.]" TEX. FAM. CODE § 263.307(b)(6). Here, A.O. testified that she has been diagnosed with depression, schizophrenia, and bipolar disorder. "A parent's mental illness or disability, without more, is not grounds for terminating the parent-child relationship. However, if a parent's mental state causes her to engage in conduct that endangers the physical or emotional well-being of a child, that conduct can be considered in a termination proceeding." *In re R.S.-T.*, 522 S.W.3d at 113 (internal citations and quotation marks omitted). A parent's refusal to acknowledge and treat a mental health diagnosis can support a finding that termination is in a child's best interest. *See In re M.C.*, No. 02-15-00290-CV, 2016 WL 354186, at *4–5 (Tex. App.—Fort Worth Jan. 28, 2016, no pet.) (mem. op.). A.O. testified that she was taking medication for depression but not for schizophrenia or bipolar disorder "[b]ecause I don't think I have bipolar anymore or schizophrenic. I think I grew out of that." When A.O. was asked if a medical professional had confirmed her belief that she outgrew those diagnoses, she stated, "I just feel that's so." She agreed that she had been prescribed medication for bipolar disorder when she was younger, and she stated that she not been told by a doctor that she no longer needed that medication. She testified that her symptoms once caused her to be "angry a lot and I would always take it out on the wrong people," but she stated that at the time of trial, "I don't have bipolar anymore. I don't get mad anymore. I'm doing actually better without those medications for bipolar." She also testified that she did not believe she needed any additional assistance with her mental health.

Longoria testified that M.R.P. has been in the same foster home since May of 2021 and is "doing really well" in that placement. She stated that M.R.P. "looks very comfortable with her

foster parents. . . . [T]hey refer to her as family. She looks really happy with everyone in the home." She also testified that M.R.P.'s foster family is "willing to be a permanent placement." *See* TEX. FAM. CODE ANN. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *see also In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Stability and permanence are paramount in the upbringing of children.").

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of A.O.'s parental rights was in M.R.P.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding. *See In re J.O.A.*, 283 S.W.3d at 345–46.

We overrule A.O.'s second issue.

### *Conservatorship*

In her third issue, A.O. argues the trial court abused its discretion by appointing the Department as M.R.P.'s sole managing conservator. We review a trial court's conservatorship rulings for abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). In making a conservatorship decision, a trial court has broad discretion in determining a child's best interest. *In re J.J.R.S.*, 607 S.W.3d 400, 404 (Tex. App.—San Antonio 2020), *aff'd*, 627 S.W.3d 211 (Tex. 2021). We may not reverse a trial court's conservatorship ruling unless it was arbitrary or unreasonable. *Id.*

The Texas Family Code requires a child's parent to be appointed managing conservator "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a). "It is a rebuttable presumption that

the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE ANN. § 153.131(b). Here, the trial court made the finding required by section 153.131(a), and we have already concluded the evidence was legally and factually sufficient to support the trial court's finding that terminating A.O.'s parental rights was in M.R.P.'s best interest. Because the standard of review "is more stringent for termination decisions than for those regarding conservatorship," we cannot say the trial court abused its discretion by refusing to appoint A.O. as M.R.P.'s managing or possessory conservator. *See In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *3 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (internal quotation marks omitted) (mem. op.).

We overrule A.O.'s third issue.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice