**Affirmed and Majority and Dissenting Opinions filed September 14, 2023.**



In The

# Fourteenth Court of Appeals

NO. 14-23-00186-CV
NO. 14-23-00208-CV

**IN THE INTEREST OF C.J.B., A CHILD**
**IN THE INTEREST OF T.A.B., A CHILD**

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 2021-01521J, 2021-01521J-B**

# MAJORITY OPINION

In two appeals a father challenges judgments terminating the parent-child relationship between the father and his sons. The father raises issues regarding the Indian Child Welfare Act and an alleged discrepancy between docket-sheet renditions and the final judgment. Concluding that father has not shown any error that is reversible, we affirm both judgments.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2021, four-year old, T.A.B. ("Thomas") was referred to his school nurse for a deep laceration on his right arm that had been concealed by a makeshift bandage.[1] The nurse also discovered other injuries including a bruise around Thomas's eye. Thomas, his father ("Father"), and his mother ("Mother") reported that the arm injury, a four-inch laceration requiring stitches, was caused by Father throwing a dustpan in Thomas's direction which accidentally hit Thomas. No one at Thomas's school, the hospital, or at the Texas Department of Family and Protective Services ("Department") believed this account. Thomas and his brothers, including his younger brother C.J.B. ("Charles"), were immediately removed from their home.

The Department filed the underlying lawsuits on September 29, 2021, seeking emergency protection, conservatorship and termination of Father's parental rights to his sons Charles and Thomas. In each case, the Miami Tribe of Oklahoma ("Miami Tribe") appeared in the trial court, filed a motion to intervene, and was treated by the trial court as a respondent. The Miami Tribe asserted that it is a federally recognized Indian Tribe and that Charles and Thomas are direct descendants of an enrolled member of the Miami Tribe and are eligible for enrollment or are enrolled with the Miami Tribe. In its live pleading in each case, the Department alleged that the Miami Tribe had been joined as a party and that the child in question was an Indian child.

The two cases were tried together to the bench. Father, incarcerated during the trial, was not present at trial but was represented by counsel. Though the Department did not specifically plead for termination under the Indian Child

---

[1] We use pseudonyms to refer to appellant and the children and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

Welfare Act, title 25, section 1901, *et seq*., of the United States Code ("ICWA") in its live petitions, no party objected to the Department's pleadings in this regard or to the Department's presentation of evidence at trial to support the termination of Father's parental rights under the ICWA. The Department devoted a substantial part of its case to developing facts pertinent to the termination of Father's parental rights under the ICWA.

Toni Rogers, a Department caseworker, testified about the Department's efforts to place the children with members of the Miami Tribe, with which Father is affiliated. According to Rogers, Father and Mother submitted the names of two relatives at the beginning of the case. Rogers testified that one of those individuals had significant history with the Department so that relative could not be considered. She said the other relative was the children's paternal aunt. Rogers testified the aunt's name was resubmitted by Mother the week before her testimony.

Rogers said the other person submitted recently by the Mother is a family friend, but that friend declined placement. Rogers reported that the children's paternal aunt told Rogers the day before her testimony that she would like to be considered. Rogers said she has not had time to submit paperwork but that the aunt will be considered.

Rogers testified that the Miami Tribe submitted preferential placements. Rogers said everyone on the list was considered, but that no one on the list was able to be a placement for the children.

Father's twenty-one-year-old sister, Adeline testified about her relationship with the Miami Tribe. Adeline testified that she's a commission-based digital artist and on-line entertainer. She said that she made $15,000 to $20,000 as income last year and that she raised $800 in an online campaign to take care of Thomas and

Charles. She explained that when she was contacted regarding placement she was initially unavailable because she had just moved, but that she contacted the department as soon as she was alerted. Adeline does not have any children of her own, is not married, and lives by herself. Howell said she lives in a two-bedroom house with a den that is converted into a playroom.

Rich England, testified as an expert witness in the area of the Department's compliance with the ICWA. No party objected to his qualifications to testify as an expert about the case or the subject matter of his testimony pertaining to the prevailing social and cultural standards of the Miami Tribe. England stated that the most important issue is that the children need to be protected. He testified that, in this case, the children were not in a good, safe environment prior to removal and that situation necessitated the Department's removal to ensure their safety. England said he was very concerned by the cuts, bruising and other physical abuse, as well as Mother's inability to be protective. He testified that it is imperative that the children have a supportive, nurturing and loving home. England described the situation in the home prior to removal as "very dangerous." England found the behaviors of the children to be consistent with children who have been abused or neglected. He said that the diagnosis of oppositional defiant disorder in one of the boys was notable because that disorder is often connected with a difficult home environment.

After his review of the case and his investigation, England produced a report with his recommendations which were admitted at trial. Regarding the continuing danger to the children, England concluded that the continued custody of the children by Mother and Father is likely to result in serious emotional or physical damage to the children. He said the efforts of the Department to work with Mother to keep the family together were diligent but were unsuccessful at preventing the

breakup of this Indian family.

Regarding placement, England said Mother has put forward an aunt who is interested in placement, which would be in line with the ICWA for placement preferences. He said that it is in the children's best interest to keep the children in the current placements until the aunt can be fully considered. England stated that the caregivers are continuing to work with both children's behaviors, and it can be very tricky at times.

Corinna Campbell-Green, the Indian Child Welfare Coordinator for the Miami Tribe, testified regarding the tribe's perspective on the Department's efforts and the children's well-being. Campbell-Green stated that the tribal family tree referred to Father's family because he is the family member that draws lineage from the tribe. She stated that Father's family was not very involved with the tribe prior to the case with the Department.

Nevertheless, Campbell-Green explained that the Miami Tribe has been involved in this case since the beginning. After reviewing England's report and hearing his testimony, she explained that the tribe agrees with the assessment made by England. Campbell-Green explained that, based on the acquired documentation, England's recommendations and assessment are appropriate and in line with the tribe's preference.

Campbell-Green further testified that the tribe's preferential placements have been taken into consideration. She testified that the Department worked diligently to try to accommodate the preferential placements. Campbell-Green stated that none of the preferential placements were appropriate so far. She said that the tribe also believes that the continued placement of the boys with their current caregivers is in their best interests.

According to Campbell-Green, the Department has made active efforts to prevent the breakdown of this Indian family. Campbell-Green testified that she believes the Department has gone "above and beyond" to try to accommodate a preferential placement, contacting kinship opportunities provided by the Miami Tribe and working through a family tree provided by the tribe. Campbell-Green said that the Department has also provided therapeutic services to the family and made sure that the relationship between the boys stays intact, despite the separate placements. She said the tribe would like to see a permanent placement for the boys to happen as soon as possible, preferably with the boys placed together.

Various other witnesses testified at trial including Charles's foster mother, other Department caseworkers, law enforcement officers, and child advocate representatives. Mother also testified about her relationship with Father in the past, the current status of that relationship, her drug usage, Father's drug problems, Father's mental health problems, the criminal charges brought against Father, and Thomas's various injuries discovered shortly before removal.

In each of the cases, the trial court signed a judgment terminating the parent-child relationship between Father and the child.[2] In each judgment the trial court made various findings under the Texas Family Code, including findings of various predicate grounds under Family Code section 161.001(b)(1) and findings that termination of the parent-child relationship between Father and the child is in the child's best interest ("Section 161.001 Findings"). *See* Tex. Fam. Code Ann. 161.001(b) (West, Westlaw through 2023 R.S.). In each judgment the trial court also made findings under subsections (d) and (f) of section 1912 of the ICWA. In each judgment the trial court appointed the Department as the child's sole

---

[2] Each judgment also terminated the parent-child relationship between Mother and the child, but today's appeals involve only appeals by Father.

managing conservator. Father has timely appealed each judgment, and in each appeal he asserts the same three issues.

## II. ISSUES AND ANALYSIS

### A. Did the trial court err by making Section 161.001 Findings in a termination case to which the ICWA applies?

In his first issue in each appeal Father argues the trial court reversibly erred by making Section 161.001 Findings because the ICWA applies to this case and these findings conflict with the ICWA. Father correctly states that no party at trial disputed that the ICWA applies to these cases, and on appeal Father and the Department agree that the ICWA applies. In 1978, the United States Congress enacted the ICWA out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 25 U.S.C. §1901(4). Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the states had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. §1901(4)(5); *Haaland v. Brackeen*, 599 U.S.—,—, 143 S. Ct. 1609, 1623, —L.Ed.2d—, (Jun. 15, 2023). This harmed not only Indian parents and children, but also Indian tribes. *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623. As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. §1901(3); *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623.

The ICWA aims to keep Indian children connected to Indian families. *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623. If an Indian child lives on a reservation, the ICWA grants the tribal court exclusive jurisdiction over all child

custody proceedings, including adoptions and foster care proceedings. *See* 25 U.S.C. §1911(a); *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623. For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. *See* 25 U.S.C. §1911(b); *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623. When a state court adjudicates the proceeding, the ICWA governs from start to finish, regardless of whether the proceeding is "involuntary" or "voluntary." *Haaland*, 599 U.S. at —, 143 S. Ct. at 1623.

Among the ICWA safeguards that apply to termination of parental rights proceedings in state court is the requirement in section 1912(f) that "[n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. §1912(f); *Haaland*, 599 U.S. at —, 143 S. Ct. at 1624. The issue Father raises is whether a trial court in a Texas termination proceeding to which the ICWA applies should make the finding under section 1912(f) of the ICWA ("Section 1912(f) Finding") as well as the Section 161.001 Findings or whether a trial court should make only the Section 1912(f) Finding. *See* 25 U.S.C. §1912(f); Tex. Fam. Code Ann. 161.001(b).

This court addressed this question in *In re W.D.H.*, a case on which Father relies in arguing his first issue. *See* 43 S.W.3d 30, 33–38 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). In *W.D.H.* the trial court terminated the father's parental rights in a case to which the ICWA applied. *See id*. at 33. The trial court did not make a Section 1912(f) Finding; instead, the trial court made Section 161.001 Findings under the beyond-a-reasonable-doubt burden of proof, rather

than the clear-and-convincing-evidence burden of proof that applies to these findings under the Family Code. *See id*. at 35. On appeal the father argued that the trial court erred by not applying the standard for termination of parental rights in section 1912(f) of the ICWA instead of the standard for termination of parental rights in section 161.001(b) of the Family Code. *See id*. at 33. This court agreed with the father that the trial court had committed this error. *See id*. The *W.D.H.* court said that "the crux of the dispute is whether the respective termination provisions of the Family Code and the ICWA may be applied simultaneously." *Id*. at 35. The court concluded that the two statutes may not both be applied, that the ICWA preempted the Family Code, and that trial courts should not make Section 161.001 Findings in an ICWA termination case because section 161.001(b) conflicts with the ICWA. *See id*.

The Department argues on appeal that *W.D.H.* is not on point because the trial court in *W.D.H.* did not make a Section 1912(f) Finding, whereas the trial court in today's case made both a Section 1912(f) Finding as well as Section 161.001 Findings. Though the Department is correct that *W.D.H.*'s procedural background differs in this way, the *W.D.H.* court specifically held that trial courts in ICWA termination cases should not make any Section 161.001 Findings, and the court reversed the trial court's judgment and remanded for further proceedings consistent with its opinion. *See id*. at 37–38, 39. Thus, part of the *W.D.H.* court's judgment was its ruling that the trial court should not make any Section 161.001 Findings on remand. *See id*.

A concurring justice in *W.D.H.* disagreed with the majority's determination that trial courts in ICWA termination cases should not make Section 161.001 Findings and thought that the two statutes could be harmonized and both could be applied to termination proceedings. *See id*. at 40 (Wittig, J., concurring). Since this

court decided *W.D.H.*, four sister courts of appeals have also disagreed with the *W.D.H.* majority's determination that trial courts in ICWA termination cases should not make Section 161.001 Findings, concluding that trial courts in ICWA cases should make Section 161.001 Findings as well as a Section 1912(f) Finding. *See In re J.L.C.*, 582 S.W.3d 421, 429 (Tex. App.—Amarillo 2018, pet. denied); *In re S.P.*, No. 03-17-00698-CV, 2018 WL 1220895, at *2 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.); *In re G.C.*, No. 10-15-00128-CV, 2015 WL 4855888, at *1–2 (Tex. App.—Waco Aug. 13, 2015, no pet.) (mem. op.); *In re K.S.*, 448 S.W.3d 521, 530–33 (Tex. App.—Tyler 2014, pet. denied). Thus, there is a 4-to-1 split among Texas courts of appeals on this issue. The parties have not cited and research has not revealed (1) an opinion from the Supreme Court of the United States, the Supreme Court of Texas, or this court sitting en banc that addresses this issue; or (2) an intervening and material change in the statutory law. Thus, under the doctrine of horizontal stare decisis, whether or not we agree with the *W.D.H.* opinion, we are bound to apply the holdings from that precedent. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). Under the binding precedent of *W.D.H.*, the trial court erred by making Section 161.001 Findings. *See In re W.D.H.*, 43 S.W.3d at 33–38.

**B.      Is the trial court's error in making Section 161.001 Findings reversible?**

We next determine whether the trial court's error in making Section 161.001 Findings is reversible. Texas Rule of Appellate Procedure 44.1(a) provides that no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals. Tex. R.

App. P. 44.1(a). Father does not explain how he was harmed by the trial court's Section 161.001 Findings. Father has not challenged the sufficiency of the evidence to support any trial court finding.[3] Generally, if a trial court makes unnecessary or improper findings, any error in making such findings would not probably cause the rendition of an improper judgment because appellate courts may ignore and give no effect to the erroneous findings. *See Dyer v. Tex. Comm'n on Environmental Quality*, 646 S.W.3d 498, 514 (Tex. 2022) (stating that if a decision is based on sufficient findings that are supported by evidence, then unnecessary and improper findings cannot make the decision reversible because an improper but superfluous finding does not prejudice the appellant); *Poindexter v. Brown*, 665 S.W.3d 842, 860 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (same as *Dyer*). After reviewing the record in each appeal, we conclude that the trial court's error in making Section 161.001 Findings in each judgment is not reversible because this error (1) did not probably cause the rendition of an improper judgment; and (2) did not probably prevent Father from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Dyer*, 646 S.W.3d at 514; *Poindexter*, 665 S.W.3d at 860. Therefore, we overrule the first issue in each appeal.

**C.  Did the trial court err in failing to make a best-interest finding in accordance with the ICWA?**

Under his second issue in each appeal, Father asserts that although the trial court made a best-interest finding under Family Code section 161.001(b)(2), the trial court reversibly erred in failing to make a best-interest finding under the

---

[3] Though Father does not challenge the sufficiency of the evidence to support any finding made by the trial court, under each second issue, Father asserts that the evidence is insufficient to support a finding that the trial court did not make but that Father claims should have been made under the ICWA. But we conclude below that the trial court was not required to make this finding and do not address the sufficiency of the evidence.

ICWA in accordance with Congress's stated goal of "promot[ing] the stability and security of Indian tribes and families." 25 U.S.C. § 1902. Father also asserts that the trial evidence is legally and factually insufficient to show that the children's best interest was taken into consideration in accordance with the ICWA, thus indicating that the trial court also should have made a finding on this point.

Father relies on title 25, section 1902 of the United States Code, entitled "Congressional declaration of policy" in support of the proposition that the ICWA requires such findings. This statute reads in its entirety as follows:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902. Under its plain text, in this declaration of policy, Congress states that it is the policy of the United States of America to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes and by providing for assistance to Indian tribes in the operation of child and family service programs. *See id.* Under its unambiguous language, this statute does not require a court terminating the parental relationship between a parent and an Indian child to find that (1) the termination is in the Indian child's best interest or is in accordance with Congress's goal of "promot[ing] the stability and security of Indian tribes and families"; or (2) the Indian child's best interest was taken into consideration in accordance with the ICWA. *See In re E.A.C.*, No.

12

07-21-00145-CV, 2021 WL 5326516, at *2 (Tex. App.—Amarillo Nov. 16, 2021, pet. denied) (concluding that nothing in the ICWA conditions termination of parental rights upon a court finding that the Indian child's best interest favors that result) (mem. op.). The two ICWA cases that Father cites under the second issue do not support the proposition that there is any requirement under the ICWA that the trial court make a best-interest finding. We conclude that the trial court was not required to make either of the best-interest findings mentioned or suggested by Father under his second issue, and therefore, the trial court did not err in failing to make this finding. *See id.* Because the trial court was not required to make any such finding, Father may not obtain a reversal of the judgments by showing that the evidence is insufficient to support any such finding. We overrule the second issue in each appeal.

**D.    Did the trial court err by not making the finding required by section 1912(d) of the ICWA?**

In his third issue in each appeal Father complains that the trial court erred by failing to make the finding required by section 1912(d) of the ICWA. *See* 25 U.S.C. § 1912(d) (requiring that a party seeking termination "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful"). The trial court made a section 1912(d) finding in each of the final judgments rendered by the trial court, and Father does not challenge the adequacy of these findings. Instead, Father contends that renditions made in the trial court docket sheet in each case show that the final judgment incorrectly reflects that the trial court made this finding and that the trial court did not make this finding. Thus, Father seeks to use these docket-sheet renditions as proof that the trial failed to make the required finding. We presume without

13

deciding that the docket-sheet renditions omit any finding under section 1912(d).

The Texas Family Code permits a trial court to make pronouncements orally, and these oral pronouncements, known as "renditions," may also be made in writing, such as in this case, through a docket-sheet entry. *See* Tex. Fam. Code Ann. § 101.026 ("'Render' means the pronouncement by a judge of the court's ruling on a matter. The pronouncement may be made orally in the presence of the court reporter or in writing, including on the court's docket sheet or by a separate written instrument."). But when there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls. *See In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also In re A.C.*, No. 04–12–00679–CV, 2013 WL 352449, at *2 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (affirming judgment terminating parental rights, even though the trial court's oral pronouncement did not include best-interest findings, because the trial court's written judgment included the best-interest findings). The parties have not cited and research has not revealed any authority to support Father's argument that in the case of conflict between a trial court's docket-sheet rendition and the court's subsequent written final judgment, the docket-sheet rendition controls. To the extent there is any inconsistency between the docket-sheet rendition and the final judgment in each of today's cases, the formal final judgment controls. *See In Interest of L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (rejecting parent's argument that trial court's oral rendition made without a best-interest finding resulted in error even though the finding was made in the final judgment).

We therefore overrule the Father's third issue in each appeal.

### III. CONCLUSION

Under the *W.D.H.* binding precedent, the trial court erred by making Section

14

161.001 Findings, but this error is not reversible. The trial court was not required to make the best-interest findings mentioned or suggested by Father under his second issue, and therefore, the trial court did not err in failing to make any of these findings. Because the trial court was not required to make any such finding, Father may not obtain a reversal of the judgments by showing that the evidence is insufficient to support any such finding. Any inconsistency between the docket-sheet rendition and the final judgment in each of today's cases does not mean there is error in the judgment because to the extent there is any such discrepancy, the final judgment controls. Because Father has not shown any error that is reversible, in each appeal we affirm the trial court's judgment.

/s/     Randy Wilson
        Justice

Panel consists of Justices Jewell, Hassan, and Wilson (Hassan, J., dissenting).

15