

**IN THE**
**TENTH COURT OF APPEALS**

─────────────

**No. 10-24-00057-CV**

**IN THE INTEREST OF J.H., A CHILD**

─────────────

**From the County Court at Law**
**Hill County, Texas**
**Trial Court No. CV120-23CCL**

───────────────────────────────

**MEMORANDUM  OPINION**

───────────────────────────────

The mother and father of J.H. appealed a judgment that terminated their parental rights to their child, J.H.[1]  In five issues, the mother complains:  (1) that the trial court erred by failing to afford her the opportunity to have counsel appointed prior to the adversary hearing; (2) that the trial court failed to admonish her of her right to counsel at the status hearing; (3) and (4) that the evidence was legally and factually insufficient for the jury to have found that termination was in the best interest of the child; and (5) that

─────────────

[1] At the trial court, this proceeding initially involved both of the mother's children, Z.S. and J.H., and both of their fathers.  The proceedings as to Z.S. were severed from this proceeding in the middle of this case because Z.S. had been placed with her father.

the evidence was legally and factually insufficient for the trial court to have named the Department of Family and Protective Services as the managing conservator of the child. In three issues, the father complains: (1) that the trial court did not have jurisdiction over the proceeding because it was not the court of continuing, exclusive jurisdiction; (2) that the father's due process rights were violated; and (3) that the trial court abused its discretion by failing to conduct evidentiary hearings.[2] Because we find no reversible error, we affirm the judgment of the trial court.

The mother and father's issues are separate and distinct from one another so we will address each parent's appellate issues separately.

## MOTHER'S APPEAL

### APPOINTMENT OF COUNSEL

In her first issue, the mother complains that the trial court erred by failing to allow her to apply for court-appointed counsel prior to the adversary hearing.[3] Section 107.013(a) of the Family Code states that the trial court "shall appoint" an attorney to represent an indigent parent who "responds in opposition to the termination or appointment" of the department as the conservator of the children at issue. *See* TEX. FAM. CODE §107.013(a)(1). Additionally, the trial court is required to inform an unrepresented parent at the first appearance of that parent of their right to be represented by an attorney

---

[2] The father does not challenge the sufficiency of the evidence to support the judgment.
[3] The adversary hearing is the initial hearing in a suit where the department has taken a child into possession. *See, generally*, TEX. FAM. CODE §262.201.

and of their right to have an attorney appointed by the trial court if they are indigent and appear in opposition to the suit. *See* TEX. FAM. CODE §107.013(a-1); *see also* TEX. FAM. CODE §262.201(c). The parent is required to file an affidavit of indigence before the trial court is required to conduct a hearing relating to the parent's indigence. *See* TEX. FAM. CODE §107.013(d). If a parent claims that they are indigent and requests the appointment of an attorney before the adversary hearing, the trial court "shall require" the parent to fill out an affidavit of indigency. TEX. FAM. CODE §262.201(d).

The mother appeared in person at the adversary hearing. The department announced that the parties had reached an agreement but when the trial court asked the mother if she agreed with the department's announcement, the mother stated that she did not understand what was going on other than her children were being placed away from her. During the trial court's discussion with the mother, the trial court informed her: "You do have a right to an attorney. If you cannot afford an attorney, I will be happy to appoint an attorney to represent you, but you have to fill out that request and you can get one of those applications in my office." The trial court then informed the mother that she could fill out the application after the hearing and that she was encouraged to do so. The trial court then asked the mother if she agreed to the purported agreement of the parties the department was reciting into the record, and the mother stated that she disagreed with only seeing her children twice per month. She did not mention being indigent or that she wanted counsel.

Because there was in fact no agreement, the trial court then conducted the adversary hearing. At the conclusion of the hearing, the trial court encouraged the mother to fill out the affidavit of indigence. The record does not show that the mother filled out an affidavit of indigence that day.

Although the trial court could have and perhaps should have pursued the matter of the appointment of counsel, the mother did not express that she was indigent. It is the filing of the affidavit of indigency by the mother that triggers the trial court's obligation to pursue the matter further, which the mother failed to do. *See In re B.C.*, 592 S.W.3d 133, 134 (Tex. 2019). The trial court did inform the mother of her right to appointed counsel if she was indigent. The trial court did not err by failing to appoint counsel to the mother prior to the adversary hearing. We overrule the mother's first issue.

### FAILURE TO ADMONISH—STATUS HEARING

In her second issue, the mother complains that the trial court erred by failing to inform her of her right to appointed counsel if she was found to be indigent pursuant to Section 263.0061(a) of the Family Code at the status hearing.[4] The department agrees that the trial court failed to admonish the mother as required but argues that any error was harmless. A judgment may only be reversed on appeal if this Court determines that the error "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P.

---

[4] The status hearing is conducted within 60 days after a temporary order is entered appointing the department as the temporary managing conservator and is for the purpose of reviewing the status of the child and the implementation of the service plan. *See* TEX. FAM. CODE Subch. C.

44.1(a)(1).

The mother argues that the trial court's failure to properly inform her of her right to counsel constituted reversible error and cites to *In re B.C.* in support of her contention. *See In re B.C.*, 592. S.W.3d at 137-38. In *B.C.*, the mother did not have counsel appointed to represent her until after trial when she appealed the termination judgment. *See id.* However, in this proceeding, counsel was appointed to represent mother shortly after the status hearing, which is very different from the initial appointment of counsel after a parent's rights have been terminated. We note that there is no affidavit of indigence from the mother in the clerk's record, so we are unable to determine if or when the mother executed an affidavit or if the trial court appointed counsel on its own initiative. The mother was represented by her appointed counsel for the duration of the proceedings, including the permanency hearings, the conducting of discovery, and the trial which was conducted in front of a jury.

We have reviewed the record, including the testimony given by the mother at the status hearing, and do not find that the trial court's failure to inform the mother of her right to an attorney at the status hearing probably resulted in the rendition of an improper termination judgment against her.[5] A family service plan had been prepared prior to the

---

[5] The mother references a discussion at the status hearing regarding the severance as to her other child, Z.S.; however, the severance was granted by the trial court at a time when the mother was represented by appointed counsel. Further, any complaints as to Z.S. are not before us in our consideration of harm relating to the judgment of termination as to J.H.

status hearing with the participation of the mother and the plan was approved by the trial court at that hearing. There was nothing to indicate that any statements by the mother at a hearing where she did not have counsel were used against her in the trial. *See, c.f., In re S.R.*, No. 10-19-00235-CV, 2019 Tex. App. LEXIS 11277 at *6 (Tex. App.—Waco Dec. 31, 2019, pet. denied) (reversing judgment due to failure to admonish finding harm due to testimony given at hearings while unrepresented by counsel used later at final trial to support termination). Nothing in the record leads us to the conclusion that the trial court's error to inform the mother of her right to counsel at the status hearing was harmful to the mother. *See* Tex. R. App. P. 44.1(a). We overrule the mother's second issue.

## BEST INTEREST

In her third issue, the mother complains that the evidence was legally insufficient to support the jury's finding that termination was in the best interest of J.H. In her fourth issue, the mother complains that the evidence was factually insufficient to support the jury's best interest finding. The mother did not challenge the legal or factual sufficiency of the evidence as to any of the predicate grounds for termination upon which the judgment was granted, which included both "endangering" grounds pursuant to Sections 161.001(b)(1)(D) and (E), that the mother had been convicted of an offense of endangering a child pursuant to Section 161.001(b)(1)(L), constructive abandonment pursuant to Section 161.001(b)(1)(N), and failure to complete her service plan pursuant

to Section 161.001(b)(1)(O).  *See* TEX. FAM. CODE §161.001(b)(1)(D), (E), (L), (N), & (O).

## STANDARD OF REVIEW—LEGAL AND FACTUAL SUFFICIENCY

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here.  *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009).

In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best interest determination. *Id*.  There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest.  *See In re C.H.*, 89 S.W.3d at 27.  The *Holley* factors focus on the best interest of the child, not the best interest of the parent.  *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).  And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest.  *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet).  Evidence relating to the

predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the child. *See C.H.*, 89 S.W.3d at 27-28.

The department removed J.H. after an investigation relating to domestic violence between the father and the mother. The mother had called 9-1-1 to report that the father had choked her and assaulted her. During the investigation, the father and mother both claimed that the other parent was using methamphetamine. The father also alleged that after he came home from working out of state, the house was filthy and unsafe for J.H., who was one and a half years old at the time of the removal. Z.S., who was 8 at the time of the removal, told an investigator that the choking incident occurred while both children were present and that domestic violence had been ongoing for many years. The department's investigation showed that the mother had a pattern of leaving the father after he assaulted her and later returning and reconciling with him.

The father was arrested for the assault and the department asked the mother to take a drug test, but she refused. Less than a week after the initial referral, the mother took drug tests by urinalysis and hair. The urinalysis was negative for illegal substances, but the hair test was positive for marijuana and a significant amount of methamphetamine. A second hair test of the mother taken approximately two months later was still positive for methamphetamine but at a much lower amount and was negative for marijuana.

J.H. was tested for illegal substances in a hair test shortly after the mother's first

test, and she tested positive for marijuana and methamphetamine. The amount of methamphetamine was slightly over half of the mother's level, but still significantly higher than the minimum amount that would trigger a positive result for methamphetamine.

The mother was arrested for and placed on deferred adjudication community supervision for endangering a child. She also was arrested less than two weeks after the removal of J.H. and Z.S. for an outstanding warrant for possession of a controlled substance. Several months later, the mother was arrested again and charged with manufacture and delivery of a controlled substance over four grams, and the mother admitted to having methamphetamine on her person when she arrived at the jail. The amount of methamphetamine found on the mother's person was approximately 9 grams. A firearm was also found in the vehicle with the mother and the man she was with at the time of her arrest.

The mother was placed on deferred adjudication community supervision after pleading guilty to the endangerment charge during the pendency of this case. Conditions of the mother's community supervision included not using drugs, not breaking the law, and participating in drug testing. The mother completed one drug test for her community supervision which was positive for amphetamine and methamphetamine. The mother failed to comply with her terms of community supervision which resulted in a motion to adjudicate being filed. At the time of trial, the mother had an outstanding

warrant for failing to appear for a hearing on the motion to adjudicate.

The mother also failed to complete most of her services in the service plan, including the psychological evaluation and therapy. She attended visitation sporadically, in part due to her various periods in jail. When she did attend visits, she did not interact properly with J.H. and Z.S.

J.H. and Z.S. were initially placed together with Z.S.'s father and his wife; however, J.H. was removed at Z.S.'s father's request and placed with the father's second cousin and the cousin's wife. J.H. was very bonded to her new caregivers at the time of trial and they wanted to adopt J.H. The wife was concerned for everyone's safety in the event that the mother and father's parental rights were not terminated. The CASA worker had observed the placement and testified that termination and the continued placement of J.H. in that home was in the best interest of J.H. Z.S.'s father was willing to maintain contact between Z.S. and J.H., who were also very bonded to each other.

Additionally, the mother did not attend the jury trial, purportedly because she had arrest warrants pending. When a parent fails to attend termination proceedings without a valid explanation, "the factfinder may reasonably infer that the parent is indifferent to the outcome." *In re A.V.G.-P.*, No. 10-23-00294-CV, 2024 WL 1327908, 2024 Tex. App. LEXIS 2209 at *10 (Tex. App.—Waco Mar. 28, 2024, no pet. h.) (*citing In re A.J.D.-J.*, 667 S.W.3d 813, 826 (Tex. App.—Houston [1st Dist.] 2023, no pet.). A parent's failure to attend the final hearing may support a finding that termination is in the child's best interest. *See*

*id*.  A parent who drops out of participation in legal proceedings where their parental rights are at stake can be presumed to lack the interest, ability, and desire to be involved in their child's life, which supports the best interest finding.

Few, if any, of the mother's actions after removal demonstrated that the mother was acting in the best interest of J.H.  She continued with her criminal activity, being arrested more than once for serious drug offenses and violating her community supervision.  She maintained a relationship of some kind with the father, who had committed domestic violence against her for many years.  The mother did nothing to address the reasons that J.H. was removed from her.  Our review of the evidence under the appropriate standards, giving full deference to the jury's role as factfinders, leads us to conclude that the evidence was legally and factually sufficient for the jury to have found that termination was in the best interest of J.H.  We overrule issues three and four.

**CONSERVATORSHIP**

In her fifth issue, the mother complains that the trial court erred by naming the department the permanent managing conservator of J.H.  "In contrast to termination findings, conservatorship determinations are governed by a preponderance-of-the-evidence standard." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).  The appointment of a conservator is reviewed for an abuse of discretion and the appointment may only be reversed if the trial court's decision is arbitrary and unreasonable.  *Id*.

"If the court terminates the parent-child relationship with respect to both parents . . ., the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM. CODE § 161.207(a). Because we have affirmed the judgment of termination of the mother's parental rights, based on our review of the evidence, we conclude that the trial court did not abuse its discretion when it appointed the department as J.H.'s managing conservator. *See In re C.N.S.*, No. 14-14-00301-CV, 2014 Tex. App. LEXIS 8612, at *33 (Tex. App.—Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem. op.) (concluding that trial court did not abuse its discretion in appointing the department as children's managing conservator based on evidence supporting termination of parental rights); *see also In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (explaining that appointment of the department as child's managing conservator may be considered consequence of termination). We overrule the mother's fifth issue. The trial court's judgment as to the mother is affirmed.

## FATHER'S APPEAL

### COURT OF CONTINUING, EXCLUSIVE JURISDICTION

In his first issue, the father complains that the trial court did not have jurisdiction over J.H. because the Hill County Court at Law was not the court of continuing, exclusive jurisdiction pursuant to Chapter 155 of the Family Code. The father argues that there was a prior proceeding in Ellis County between the father and mother relating to J.H. that

should have been transferred to Hill County in order for the trial court to have jurisdiction over the termination proceeding. In support of his position, a document entitled "Motion Attacking the Court's Jurisdiction" was filed on the day the jury trial began that alleged that another proceeding involving the child had taken place. The father also attached pictures of a docket sheet and a petition purportedly filed in Ellis County as an appendix to his brief in this appeal but did not provide any documentary evidence to the trial court in support of his contentions. The father does not cite to, nor have we found, a copy of a final order from that proceeding in the clerk's or reporter's record.

Section 155.001(a) establishes that "a court acquires continuing, exclusive jurisdiction over … a child on the rendition of a final order." TEX. FAM. CODE §155.001(a). The plain language of Section 155.001(a) requires a final order in order for a court to be considered the court of continuing jurisdiction. Without evidence that a final order was entered in another proceeding, the trial court was not deprived of jurisdiction to proceed to a trial on the merits in this termination proceeding.

The father also complains in his first issue that there is nothing in the record showing the trial court requested identification of the court that last had continuing, exclusive jurisdiction of the child in this suit. To be preserved for appellate review, such a complaint must first be made in the trial court. *See* TEX. R. APP. P. 33.1(a); s*ee also In re L.T.*, No. 04-17-00577-CV, 2018 Tex. App. LEXIS 485 at *5, 2018 WL 442720 (Tex. App.—

San Antonio Jan. 17, 2018, pet. denied) (mem. op.); *In re M.L.G.J.*, No. 14-14-00800-CV, 2015 Tex. App. LEXIS 2750, 2015 WL 1402652, at *3 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.); *Jones v. Tex. Dep't of Family & Protective Servs.*, 400 S.W.3d 173, 178-79 (Tex. App.—Austin 2013, no pet.) (stating, under the applicable statute, an order rendered without the required request is merely "voidable" and not void). The father did not complain to the trial court about the absence of a proper request for identification of the court that last had continuing, exclusive jurisdiction of the children. He has therefore not preserved that issue for appellate review. *See In re L.T.*, 2018 Tex. App. LEXIS 485 at *5; TEX. R. APP. P. 33.1(a).

The father also refers to Section 155.201 in support of his argument on appeal. Section 155.201 is limited to proceedings involving a suit for dissolution of marriage. *See* TEX. FAM. CODE §155.201. There is nothing in the record to show that the proceeding in Ellis County relating to J.H. was a marriage dissolution proceeding, so that provision is not applicable here.

We find that the trial court had jurisdiction to enter the termination judgment. The father's first issue is overruled.

DUE PROCESS VIOLATIONS

In his second issue, the father complains that his due process rights were violated by the trial court's failure to inform him of his right to counsel, the trial court's failure to give him timely notice of the hearing to accelerate the deadlines due to aggravated

circumstances, and the trial court's failure to conduct an evidentiary hearing on his motion to reconsider the aggravating circumstances and motion to separate the mother's termination trial from the father's trial.

The department argues that the father did not object to the trial court regarding any of these complaints on the basis of violating his due process rights, and therefore, none of them were properly preserved. In order to preserve a complaint for appellate review, the father was required to raise these constitutional complaints to the trial court. *See* TEX. R. APP. P. 33.1(a) (requiring an objection and ruling in the trial court to preserve an issue for appeal); *see also In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (parent asserting a due process violation in a termination case must raise the constitutional claim in the trial court to preserve error). The Texas Supreme Court has expressly determined that allowing appellate review of unpreserved due process complaints in termination cases "would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved." *Id.* at 711; *see In re S.R.*, No. 10-20-00281-CV, 2021 WL 824979, 2021 Tex. App. LEXIS 1569 at *5 (Tex. App.—Waco Mar. 3, 2021, pet. denied) (mem. op.). We agree with the department that the father has failed to preserve these due process violation complaints by making a timely objection to the trial court.

Even if we were to move past the preservation requirement, we would find that the father's complaints on this issue are inadequately briefed. *See* TEX. R. APP. P. 38.1(i). The father's brief does not contain any citations to the record in support of his contentions

as to this issue. The father does not include any authority relating to due process or any caselaw as to any aspect of his complaints. Even after the department raised the issue of preservation and inadequate briefing, the father did not file a supplemental brief with this Court to respond to the department's allegations or to argue that preservation was not required. An appellate court has no duty to brief issues for an appellant, and if we were to do so, "we would be abandoning our role as neutral adjudicators and becom[ing] an advocate for that party." *In re A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied). We overrule the father's second issue.

**FAILURE TO CONDUCT HEARINGS**

In his third issue, the father complains that the trial court abused its discretion by failing to conduct evidentiary hearings relating to: (1) the issue relating to the court of continuing, exclusive jurisdiction, (2) the trial court's exercise of jurisdiction over the father without proper service or admonishments, (3) a needed expert on handwriting analysis because the father contended that the signature on the adversary hearing order was a forgery, (4) the irregularities in the status hearing order and the permanency hearing order, (5) errors in the "official" record, and (6) the motion to reconsider due to his counsel's injury.

The department contends that the father's issue three is inadequately briefed because his brief on this issue contains no citations to the appellate record or any authority in support of any of the father's complaints. In order to properly present a

complaint on appeal, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). We agree that this issue is inadequately briefed because the father's brief lacks any citation to the record to support his various contentions in this issue, provided no argument beyond bare assertions, and has no citation to authorities in support of this issue. *See In re B.T.D.*, No. 01-16-00582-CV, 2017 Tex. App. LEXIS 503 at *19, 2017 WL 343613, at *7 (Tex. App.—Houston [1st Dist.] Jan. 20, 2017, no pet.) (mem. op.) ("[W]e have 'no duty to search a voluminous record without guidance from appellant to determine whether an assertion of reversible error is valid.'"). Because the father's third issue is inadequately briefed, his third issue is waived.

**CONCLUSION**

Having found no reversible error as to the mother or the father, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Johnson, and
  Justice Smith
Affirmed
Opinion delivered and filed August 8, 2024
[CV06]

